# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | 2:06-cr-0280-RCJ-PAL |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| BROSE ROBERTS, ) | |
| ) | |
| Defendant. ) | |

This matter comes before the Court on Defendant's Objections (#36) to Magistrate Judge Leen's Report of Findings and Recommendation (#30) recommending denial of Defendant's Motion to Suppress Evidence for Fourth Amendment and Fifth Amendment Violations (#18).  The Court has considered the objections, the pleadings on file, and oral argument on behalf of all parties.  Accordingly, based on the reasons set forth below, the Court denies Defendant's Objections (#36). Magistrate Judge Leen's Report of Findings and Recommendation (#30) is adopted and affirmed, and Defendant's Motion to Suppress (#18) is denied.

## BACKGROUND

The defendant, Brose Roberts ("Roberts"), is charged by way of an indictment returned August 1, 2006, with felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  The indictment also contains a forfeiture allegation.  The indictment

1  arises out of Roberts' arrest on February 3, 2006, by officers of the Las Vegas Metropolitan

2  Police Department ("LVMPD") on the corner of Rosanna and O'Bannon in Las Vegas,

3  Nevada.

4      LVMPD Officer Virginia Griffin was dispatched to investigate a call from a resident

5  neighbor who reported several suspicious individuals in the street near a vehicle in view of

6  his residence. The neighbor thought the individuals might be engaged in drug activity or

7  were stripping the vehicle. Officer Griffin arrived at the location within minutes of the call

8  and saw Roberts standing next to the vehicle described in front of the house described. She

9  parked her patrol car and attempted to investigate the neighbor's report of suspicious activity.

10      Officer Griffin was alone when she encountered Roberts standing near a vehicle. She

11  requested to speak with him, but Roberts was very hesitant and placed his hands in his

12  pockets. Officer Griffin again asked Roberts if she could speak with him, and Roberts

13  questioned her several times about why she wanted to talk with him and asked, "Why do you

14  want to search me?" Officer Griffin said, "I'm not going to search you yet." Officer Griffin

15  requested that Roberts approach her vehicle in order to speak with him. As he slowly

16  approached her patrol car, he looked to the ground and placed his hands in his pockets several

17  times despite her requests to keep his hands visible for her own safety. A second officer,

18  Officer Kingsley, arrived and walked to the front of Officer Griffin's patrol vehicle. Roberts

19  was about fifteen feet away from Officer Griffin's patrol car. He was wearing a large, heavy,

20  bulky jacket, and Officer Griffin did not know whether he had a weapon concealed. She

21  asked him if he had any guns or weapons on his person, and he said no. She felt that Roberts

22  was acting very suspicious, and she was concerned about him having a weapon because he

23  was not listening to her commands, was nervous, kept looking toward the ground, not making

24  eye contact, and kept putting his hands in his pockets.

25

Officer Griffin told Roberts to step toward her patrol car and that she was going to pat him down for weapons. Roberts looked up from the ground and immediately turned at an angle, raised his right foot up and right arm up, and said, "No, you're not going to search." At this point, she drew her weapon. Roberts was approximately three to five feet from her at that time. Roberts then moved toward her patrol car and put his hands out. She holstered her weapon, and with Officer Kingsley acting as cover, she went behind Roberts, placed him in handcuffs, and patted him down for weapons. She located a weapon in Roberts' front right pocket, pulled it out, and advised Officer Kingsley that she recovered a firearm. It was a .38 caliber firearm, fully loaded.

Officer Griffin advised Roberts of his *Miranda* rights, and he indicated that he understood those rights. She asked if the weapon was his, and he said no. She asked where he got the weapon, and he responded that he would not like to answer that question. She then asked why he was carrying a weapon, and he said "because there are bad people who want to hurt me."

After an evidentiary hearing, Magistrate Judge Leen issued her Report of Findings and Recommendation (#30) on the Motion to Suppress (#18). Magistrate Judge Leen found that: (1) the initial encounter between Officer Griffin and Defendant Roberts was consensual; (2) Roberts was not seized for purposes of the Fourth Amendment until after Officer Kingsley arrived because Officer Griffin initially requested to speak with Roberts and obtain his cooperation in her investigation; (3) Officer Griffin had reasonable suspicion that Roberts was armed and, under the circumstances of the encounter, potentially dangerous to seize him and conduct a pat down of his person; and (4) Roberts did not invoke his right to remain silent by declining to answer a single question under the circumstances presented. Accordingly, Magistrate Judge Leen recommended that the motion to suppress be denied.

(*See* #30.)  Defendant timely objected to the Report.  (*See* #18.)

Defendant makes several objections to Magistrate Judge Leen's Report and Recommendations.  First, Roberts objects to the finding that Officer Griffin's initial encounter with the defendant was consensual.  Roberts argues that this encounter, initiated by Officer Griffin, quickly turned into an investigative detention.  He claims that a reasonable person in his position would have felt restrained by Officer Griffin's show of authority and would have felt unable to leave her presence.  Her statements would have suggested to a reasonable person that compliance with her request was required.  Roberts further argues that his rhetorical questions to Officer Griffin were declarations of his unequivocal willingness to cooperate and signal his termination of the encounter.

Second, Defendant objects to the finding that he was not seized until after Officer Kingsley arrived.  He argues that Magistrate Judge Leen incorrectly found that Roberts' behavior, coupled with the totality of the circumstances surrounding the encounter, gave Officer Griffin reasonable grounds to believe that he was armed and dangerous.

Third, Defendant objects to Magistrate Judge Leen giving any weight to the neighbor's 311 call because this call lacked the indicia of reliability.   Roberts concedes that the 311 caller identified himself and his location, making himself vulnerable to possible criminal sanction for a false report, and, therefore, satisfying the first and third factors under the Ninth Circuit's decision in *United States v. Terry-Crespo*, 356 F.3d 1170 (9th Cir. 2004).  However, he argues that because the 311 was a non-emergency call, and provided only general and vague information of potential criminal activity, the tip should not be regarded as reliable under the second and fourth factors articulated in *Terry-Crespo*.  Additionally, he points out that the court in *Terry-Crespo* recognized the heightened reliability of a 911 emergency call.  Roberts acknowledges that under *Terry*, a law enforcement officer may

conduct a pat down search for weapons if she has reasonable suspicion to believe a suspect is armed and dangerous, but disputes Officer Griffin had reasonable articulable facts to suggest he was armed and dangerous.

Finally, Roberts objects to the finding that he did not invoke his right to remain silent by declining to answer a single question. He argues that Officer Griffin violated his Fifth Amendment rights when she continued to question him about the firearm after he attempted to cut off all questioning.

The Government's response (#38) opposed the objections and adopts Magistrate Judge Leen's Report (#30).

## DISCUSSION

**I.   Standard of Review**

The Court reviews *de novo* objections to a magistrate judge's report and recommendation on motions to suppress evidence in a criminal case. 28 U.S.C. § 636(b)(1)(B).

**II.   Fourth Amendment**

The Fourth Amendment secures "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. Amend. IV. The Fourth Amendment protects reasonable and legitimate expectations of privacy. *Katz v. United States*, 389 U.S. 347 (1967). The Fourth Amendment protects "people not places." *Id.* Evidence obtained in violation of the Fourth Amendment, and evidence derived from it may be suppressed as the "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471 (1963).

**A.   Standard of Review**

In determining whether a Fourth Amendment violation has occurred, and, if so,

whether suppression is warranted, the Court must determine whether the encounter between Roberts and Officer Griffin was a seizure. Not all contacts between policemen and citizens involve seizures for purposes of the Fourth Amendment. Only when an officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen does a seizure occur. *Terry v. Ohio*, 392 U.S. 1, 19, n.16 (1968).

Fourth Amendment jurisprudence recognizes three levels of contact between law enforcement officers and citizens: (1) consensual encounters, (2) investigatory detentions, and (3) arrests. A consensual encounter is not a seizure within the meaning of the Fourth Amendment. However, investigatory detentions and arrests are seizures. The Ninth Circuit reviews a district court's grant or denial of a motion to suppress *de novo*. *United States v. Reid*, 226 F.3d 1020, 1025 (9th Cir. 2000). The district court's factual findings are reviewed for clear error. *United States v. Fernandez-Castillo*, 324 F.3d 114, 117 (9th Cir. 2003). The Court of Appeals reviews whether an encounter between an individual and a law enforcement officer is a seizure *de novo* as a mixed question of law and fact. *United States v. Cormier*, 220 F.3d 1103, 1110 (9th Cir. 2000).

### B.     Initial Encounter

Roberts argues that he was seized and detained without reasonable suspicion during his initial contact with Officer Griffin. The Government contends that the initial contact between Officer Griffin and Roberts was not a seizure, but argues in the alternative that Officer Griffin had reasonable suspicion to detain and question Roberts.

For Fourth Amendment purposes, a seizure occurs "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry*, 392 U.S. at 19, n.16. Justice Stewart's opinion in *United States v. Mendenhall*, 446 U.S. 544 (1980), developed what the courts have referred to as the *Mendenhall* test for when

1  a seizure occurs: "[A] person has been 'seized' within the meaning of the Fourth Amendment

2  only if, in view of all of the circumstances surrounding the incident, a reasonable person

3  would have believed that he was not free to leave." *Id.* at 554.  If a reasonable person would

4  feel free "to disregard the police and go about his business," the encounter is consensual and

5  no reasonable suspicion is required. *California v. Hodari D*, 499 U.S. 621, 628 (1991).  "The

6  Fourth Amendment proscribes unreasonable searches and seizures; it does not proscribe

7  voluntary cooperation." *Florida v. Bostick*, 501 U.S. at 439.

8  However, the mere fact that an individual encountering a police officer does not feel

9  free to leave does not mean a seizure has occurred. Id. at 435.  In *Bostick*, the Supreme Court

10  explained that where Bostick's freedom of movement was restricted by a factor independent

11  of police conduct – *i.e.,* because he chose to take the bus and may have feared that if he

12  disembarked, the bus would leave without him – the "free to leave" analysis was

13  inapplicable.  The Court held: "in such a situation, the appropriate inquiry is whether a

14  reasonable person would feel free to decline the officer's request or otherwise terminate the

15  encounter." *Id.*  The "reasonable person" test is an objective one and presupposes an

16  *innocent* person. *Id.* at 438 (emphasis in original).  Thus, the Court held:

> . . . in order to determine whether a particular encounter
> constitutes a seizure, a court must consider all of the
> circumstances surrounding the encounter to determine
> whether the police conduct would have communicated to a
> reasonable person that the person was not free to decline
> the officers' requests or otherwise terminate the encounter.

*Id.* at 439.

21  "A seizure does not occur if an officer applies physical force in an attempt to detain a

22  suspect but such force is ineffective." *United States v. Hernandez*, 27 F.3d 1403, 1407 (9th

23  Cir. 1994), citing *Hodari D*, 499 U.S. at 625.  Similarly, a seizure does not occur for Fourth

24  Amendment purposes when an officer makes a show of authority to which the subject does

not yield. *Hodari D*, 499 U.S. at 627. Therefore, the Supreme Court clarified that the *Mendenhall* test for when a person has been seized within the meaning of the Fourth Amendment does not mean that whenever a show of force is made a person has been seized. The *Mendenhall* test to determine when a "show of authority" constitutes a seizure is an objective one. *Id.* It does not mean that "whenever" a show of authority has been made a person is seized. Rather, although a show of authority is a necessary condition, it is not sufficient in and of itself to constitute a seizure. The *Mendenhall* test is "not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person." *Id.* If an officer's "show of authority" does not produce a stop, no seizure has occurred.

In *Hodari D*, the Supreme Court explained that the exclusionary rule does not apply to an officer's unlawful show of authority, reasoning:

> Unlawful orders will not be deterred, moreover, by sanctioning through the exclusionary rule those of them that are *not* obeyed. Since policemen do not command "Stop!" expecting to be ignored, or give chase hoping to be outrun, it fully suffices to apply the deterrent to their genuine, successful seizures.

*Id.* (emphasis in original).

### 1.   **Consensual Encounters**

The Supreme Court has long held that police may stop a citizen at any time, request identification and other information, and even request permission to search so long as a reasonable innocent person in the citizen's position recognizes that he or she is free to leave or terminate the encounter. *Terry*, 392 U.S. at 1; *Florida v. Royer*, 460 U.S. 491 (1983); *Florida v. Rodriguez*, 469 U.S. 1 (1984) (*per curiam*); *I.N.S. v. Delgado*, 466 U.S. 410 (1984). Moreover, "police officers can approach individuals as to whom they have no reasonable suspicion and ask them potentially incriminating questions." Bostick, 501 U.S. at

437. The Supreme Court has repeatedly held that "mere police questioning does not constitute a seizure." *Id.*

> In *United States v. Drayton*, the Supreme Court reaffirmed its prior holdings that:
>> Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen.

536 U.S. 199, 200 (2002), citing *Royer*, 460 U.S. at 497 (1983), and *Rodriguez*, 469 U.S. at 5-6.

There is no seizure, for purposes of the Fourth Amendment "when police ask questions of an individual, ask to examine the individual's identification, and request consent to search his or her luggage – so long as the officers do not convey a message that compliance with their request is required." *Bostick*, 501 U.S. at 437. Or, as the Supreme Court reiterated in *Drayton*, "[e]ven when law enforcement officers have no basis for suspecting a particular individual, they may pose questions, ask for identification, and request consent to search luggage – provided they do not induce cooperation by coercive means . . . If a reasonable person would feel free to terminate the encounter, then he or she has not been seized." 536 U.S. at 201 (internal citation omitted). A citizen's encounter with a police officer "will not trigger Fourth Amendment scrutiny unless it loses its consensual nature." *Id.*

In this case, Defendant claims both that he attempted to terminate the encounter by not responding to Officer Griffin's questions, and that he felt compliance with her requests was required such that he did not feel free to leave. Looking at the totality of the circumstances, a reasonable innocent person in his position would have not believed that

compliance with Officer Griffin's initial requests was required.

### 2. <u>Investigatory Detentions</u>

The Fourth Amendment requires that a *Terry* stop, or an investigatory detention, be supported by "reasonable suspicion" that criminal activity may be afoot. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). In assessing whether an officer has reasonable suspicion to conduct an investigatory detention, reviewing courts look at the "totality of the circumstances" of each case to see whether the detaining officer had a "particularized and objective basis" for suspecting legal wrongdoing. *Arvizu*, 534 U.S. at 273. "An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *United States v. Cortez*, 449 U.S. 411, 417 (1981). A reviewing court's determination of reasonable suspicion is a process that "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *Arvizu*, 534 U.S. at 273, citing *Cortez,* 449 U.S. at 418. The Fourth Amendment is satisfied if an officer's action is supported by reasonable suspicion to believe that criminal activity may be afoot, and observation of factors which are by themselves consistent with innocence may collectively amount to reasonable suspicion. *Id.* at 273-74. Reasonable suspicion is not a matter of hard certainties, but of probabilities. *Cortez*, 449 U.S. at 417-18. However, reasonable suspicion requires more than an officer's "hunch" even if the hunch later turns out to be a good one. *Terry*, 392 U.S. at 27. The reasonable suspicion standard is less than a preponderance of the evidence. *United States v. Sokolow*, 491 U.S. 1, 7 (1989).

In *Adams v. Williams*, the Supreme Court explained its holding in *Terry* as follows:

> In *Terry*, this Court recognized that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there was no probable cause to make an arrest. The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response.
>
> A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.

407 U.S. 143, 145-147 (1972) (citations omitted).

Reasonable suspicion to conduct an investigatory detention may be provided by a tip of an informant if that tip contains sufficient indicia of reliability. *Id.* at 147. A tip without sufficient indicia of reliability will not justify a *Terry* stop. *Florida v. J.L.*, 529 U.S. 266, 270-72 (2000). An unverified tip from a known informant may be sufficiently reliable to justify a *Terry* stop and frisk. *Adams*, 407 U.S. at 147. A third party report of suspected criminal activity may establish reasonable suspicion if the report possesses sufficient indicia of reliability. *Fernandez-Castillo*, 324 F.3d at 117. A report from a known source, made contemporaneously with the informant's observation, an officer's discovery of the car described by the dispatcher within minutes of the report, and an officer's independent observations tending to corroborate the report create reasonable suspicion. *Id.* at 117-18, n.3, 122-23.

A 911 emergency call is entitled to greater reliability than a tip concerning general criminality. *Terry-Crespo*, 356 F.3d at 1176. There, the court held the officer had reasonable suspicion to conduct a *Terry* stop where a 911 caller, who identified himself, reported that he had been threatened with a gun by a man he described. A police officer was dispatched to the

location the caller reported, arrived on the scene within thirty seconds and spotted a man who fit the description provided. The officer got out of his patrol vehicle, drew his gun, pointed it at the suspect and told him to put his hands up and not move. When a backup officer arrived, the suspect was handcuffed and patted down. During the pat down, a .45 caliber semi-automatic handgun fell from the suspect's waistband to the ground, and he was arrested. The Ninth Circuit held that the 911 call standing alone had sufficient indicia of reliability to provide reasonable suspicion for the stop and frisk.

In the instant case, a neighbor made a 311 call (non-emergency) to the police. Defendant argues that a 311 call does not have the same indicia of reliability as a 911 call. However, the neighbor identified himself and his location and provided specific details of the suspicious activity. In this situation, the 311 call, despite its "non-emergency" nature, is more akin to the 911 call in *Terry-Crespo* than a tip concerning general criminality. It has sufficient reliability to provide reasonable suspicion for the stop and frisk, particularly when combined with the circumstances of Defendant's suspicious and uncooperative behavior during the initial encounter with Officer Griffin.

An officer may frisk an individual for weapons where she has reason to believe that she is dealing with an armed and dangerous individual. *Terry*, 392 U.S. at 27. *Terry* held:

> . . . where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, wherein the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in

an attempt to discover weapons which might be used to assault him.

*Id.* at 30.

The Ninth Circuit has "identified a wide variety of factors that can support a reasonable belief that an individual is armed." *United States v. Flatter*, 456 F.3d 1154, 1157 (9th Cir. 2006). Significant weight is given to an officer's observation of a visible bulge in an individual's clothing that could indicate the presence of a weapon. *Id.* Sudden movements, or repeated attempts to reach for an object that is not immediately visible may give rise to a reasonable suspicion a defendant is armed. *Id.* at 1158. The nature of the crime suspected, and whether it is associated with weapons may create reasonable suspicion for a pat down search. *Id.* However, to comport with the Fourth Amendment, a police officer must have more than a reasonable belief that *if* the individual with whom contact is made is armed, he or she would be dangerous. *Id.*

Here, Roberts' behavior and the totality of circumstances gave Officer Griffin reasonable grounds to believe that he was armed and potentially dangerous. Roberts was seized when Officer Griffin, in Officer Kingsley's presence, drew her weapon on Roberts, handcuffed him, announced her intention to pat him down for weapons, and patted him down for weapons. This did not convert the stop and frisk into an unlawful arrest without a warrant.

### 3. **Arrests**

An arrest is a seizure which must be supported by probable cause. *Adams*, 407 U.S. at 148-49. There is no bright line rule for determining when an investigatory detention is converted into a full fledged arrest. *United States v. Sharpe*, 470 U.S. 675, 685 (1985). The determination of whether a *Terry* stop has been converted into a full fledged arrest requires

an examination of the totality of the circumstances surrounding the encounter, and each case must be decided on its own facts.  *United States v. Parr*, 843 F.2d 1228, 1231 (9th Cir. 1988). "Pointing a weapon at a suspect, ordering him to lie on the ground, handcuffing him, and placing him for a brief period in a police vehicle for questioning – whether singly or in combination – does not automatically convert an investigatory detention into an arrest requiring probable cause." *Allen v. City of Los Angeles*, 66 F.3d 1052, 1056 (9th Cir. 1995). "The use of force in making a stop will not convert the stop into an arrest 'if it occurs under circumstances justifying fears for personal safety.'" *Id.*, quoting *United States v. Jacobs*, 715 F.2d 1343, 1345-46 (9th Cir. 1983).

Roberts was arrested on probable cause when Officer Griffin saw and seized the gun in his pocket.  He received and waived his *Miranda* warnings.  He did not invoke his right to remain silent under the Fifth Amendment by declining to answer a single question.  Nor did Officer Griffin violate his right to remain silent by asking him additional questions after he declined to answer the one.

## CONCLUSION

IT IS HEREBY ORDERED that Defendant's Objections (#36) are denied.

IT IS FURTHER ORDERED that Magistrate Judge Leen's Report of Findings and Recommendation (#30) is adopted and affirmed, and Defendant's Motion to Suppress (#18) is denied.

DATED: May 9 , 2007.

_____
ROBERT C. JONES
UNITED STATES DISTRICT JUDGE